**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:20-CV-24077-CMA**

MSP RECOVERY CLAIMS, SERIES LLC,
and MSPA CLAIMS 1, LLC,

       Plaintiffs,

v.

AMERICAN NATIONAL GENERAL
INSURANCE CO, and AMERICAN
NATIONAL PROPERTY & CASUALTY
CO.,

       Defendants.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND/OR STRIKE**
**THE CLASS ALLEGATIONS WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, MSP Recovery Claims, Series LLC,[1] and MSPA Claims 1, LLC (collectively, "Plaintiffs"), file this Response in Opposition to Defendants, American National General Insurance Company, and American National Property & Casualty Company, ("Defendants") Motion to Dismiss the Amended Complaint [ECF No. 24] (the "Motion").[2] For the reasons stated below, Defendants' Motion should be denied.

## INTRODUCTION

Things have changed. Yet despite the reversal of eight (8) dismissals by the Eleventh Circuit in just the last 12 months, Defendants spend their Motion continuing to misdirect the Court and reaching back for the same old arguments. If Defendants were unable to read the writing on the wall before, they are now simply refusing to accept binding Eleventh Circuit precedent. But Plaintiffs are entitled to pursue these properly pled claims against Defendants, and the endless obstacles erected by Defendants to forestall their required reimbursements under the law should be rejected so that the claims can be decided on their merits.

The Medicare Secondary Payer Act's ("MSP Act") private cause of action "is remarkably simple." *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1320 (11th Cir. 2019). Plaintiffs' assignors are Medicare Advantage Organizations ("MAOs") who paid medical bills subject to overlapping coverage from the Defendants, private no-fault and liability insurers. The Defendants knew about the underlying accidents; admitted their primary payer responsibility to CMS; and did not reimburse Plaintiffs' assignors – § 1395y(b)(3)(A) provides the remedy. *MSP Recovery Claims*, *Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1308 (11th Cir. 2020).

Over the last year, the Eleventh Circuit has reviewed Plaintiffs' standing and pleadings. "[T]hings have changed." *Tenet*, 918 F.3d at 1319. As for standing, the Eleventh Circuit confirmed that an injury-in-fact suffered by Plaintiffs' assignors confers standing on Plaintiff, such as when primary payers fail to reimburse secondary payments. *Id.* at 1320 ("[Plaintiff's assignor] suffered an injury-in-fact when it had to wait seven months for appropriate reimbursement. And it validly assigned the right to vindicate that injury . . . As a result, MSPA has standing."). As for pleading, the Eleventh Circuit acknowledged the sufficiency of Plaintiff's pleading approach in cases such as this one: "given the case's procedural posture, of course . . . [and] based on our precedent

---

[1] Plaintiff, MSP Recovery Claims, Series LLC, is at times referred to herein as "MSPRC."
[2] References to Defendants' Motion is the page number located in the footer of the document as opposed to the CM/ECF numbered references.

interpreting the private cause of action, MSPA seems to have done everything it needed to do." *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 772 (11th Cir. 2020).

Most recently, the Eleventh Circuit clarified that primary payers, like Defendants, are liable for double damages whenever they have constructive knowledge of their reimbursement obligation and fail to make payment to Medicare within 60 days. *See ACE*, 974 F.3d at 1319. In "agree[ing] with Plaintiffs on all issues" the *ACE* decision went on to define the circumstances which evidence constructive knowledge in the Medicare Secondary Payer context: "The [primary payer's] *filings with HHS evidence [its] knowledge that [it] owed* primary payments, including *the primary payments for which [Plaintiff] seeks reimbursement*. For the remaining claims, *Defendant['s] settlement agreements with beneficiaries show, at minimum, that Defendant[] had constructive knowledge that [it] owed the primary payments." Id.* (emphasis added)[3]; *see also Baxter*, 345 F.3d at 903 (holding that a complaint "sufficiently alleges constructive knowledge" on behalf of the primary payer based on the primary payer's entry into a settlement agreement with beneficiaries).

Defendants ask this court to ignore these recent, dispositive events, including already in-place, and binding, precedent such as *Humana Med. Plan, Inc. v. W. Heritage*, 832 F.3d 1229 (11th Cir. 2016) and *United States v. Baxter Int'l, Inc.*, 345 F.3d 866 (11th Cir. 2003), which clearly set forth the standard for how MSP Act claims should be pled and proceed.[4] Things have changed, yet Defendants spend their Motion reaching back for old arguments – looking to manufacture elements

---

[3] Indeed, Defendants' Motion to Dismiss underscores that the *ACE* court and HHS got it right. Based on the information alleged in the Complaint and provided on Exhibit A, Defendants were able to *precisely* identify the claims asserted in Exhibit A, along with a detailed factual background for each claim. ECF No. 97-4.

[4] Defendants' repeated citations to *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, 2018 WL 5112998, *1 (S.D. Fla. Oct. 19, 2018) for out-of-context and misleading soundbites further makes Plaintiffs' point. The Eleventh Circuit reviewed the assignments at issue in that case and reached a different conclusion. Joining with the Seventh Circuit, the *Ace* court found "the corporate arrangement between HFAP and Health First was not just complex, but . . . freighted with overlapping names and functions." *ACE*, 974 F.3d at 1317. As such, "it was eminently reasonable for MSPRC to plead that it had a valid assignment of claims from an MAO" and, in any event, "MSPRC was well positioned to cure the technical defect and refile its case with the same claims." *Id.* And in *QBE*, the Eleventh Circuit determined that MSPRC's efforts to cure that assignment chain were effective. *MSP Recovery Claims v. QBE Holdings, Inc.*, 965 F.3d 1210, 1220 (11th Cir. 2020) ("It seems obvious [] that the Nunc Pro Tunc Assignment created a valid assignment of claims in this action."). The Court should view Defendants' efforts to mislead with a particularly jaundiced eye.

and preconditions that are found nowhere in the "remarkably simple" cause of action at issue. Notably, the Eleventh Circuit's extensive list of binding decisions barely appear in Defendants' Motion. Defendants' arguments warrant little regard and, for the reasons detailed below, should be denied in their entirety.

## ARGUMENT

### A.   Plaintiffs' Allegations Plainly State a Claim for Relief under the MSP Act's Private Cause of Action.

In the Eleventh Circuit, to state a claim under 42 U.S.C. §1395y(b)(3)(A), Plaintiffs need only allege three elements: "(1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) [damages]." *W. Heritage*, 832 F.3d at 1239. These elements were confirmed by the Eleventh Circuit in *Western Heritage* and buttressed in *Kingsway*. *See id.* at 1239; *Kingsway*, 950 F.3d at 771-72. Defendants, nevertheless, *and without any support at all*, ask the Court to establish a new set of pleading elements entirely detached from the MSP Act's plain text. Courts reaching the sufficiency of Plaintiffs' substantive allegations have almost uniformly rejected such efforts. *See, e.g., MSPA Claims 1, LLC v. Covington Spec. Ins. Co.,* Case No. 19-21583-Williams/Torres, 2020 U.S. Dist. LEXIS 84000, at *29-30 (S.D. Fla. May 12, 2020), *report and recommendation adopted* Case No. 19-21583-Williams/Torres, ECF No. 115 (S.D. Fla. May 12, 2020) (S.D. Fla. May 12, 2020) (finding the same approach to be a particularly "dubious effort," and holding an almost identical "argument for a different set of elements . . . doomed because the Eleventh Circuit has already made that point clear in a published opinion").

Most recently, the Eleventh Circuit held that "[i]f Medicare or a [Medicare Advantage Organization] has made a conditional payment, and the primary payer's 'responsibility for such payment' has been 'demonstrated,' as by a judgment or settlement agreement, the primary payer is obligated to reimburse Medicare or the MAO within 60 days." *Ace*, 974 F.3d at 1309. "When a primary payer fails to do so, Medicare can seek 'double damages'"—a cause of action that extends to "MAOs (and their assignees)" by virtue of 42 U.S.C. § 1395y(b)(3)(A). *Id.*[5] Together with

---

[5]   *See also MSP Recovery Claims, Series LLC v. OneBeacon Ins. Group, Ltd., et al.*, Case No. 6:20-cv-553-Orl-37EJK, ECF No. 45 (attached as Exhibit A), slip op. at 15-16 (M.D. Fla. Jan. 19, 2021) (denying motion to dismiss because plaintiff adequately pled its claims pursuant to this legal standard and therefore had "done everything it needed to do" at the motion to dismiss stage; and confirming that plaintiffs can seek double damages).

*United States v. Baxter Int'l, Inc.*, 345 F.3d 866 (11th Cir. 2003), these decisions set a clear legal standard for how MSP Act claims should proceed. Nothing more is required.

Plaintiffs' allegations check every box. Defendants provide no-fault and liability coverage[6] and are thus primary payers for the purposes of the MSP Act. *See* ECF No. 7 at ¶¶ 2, 36-39, and 46-53; ECF No. 7-1 (Showing Defendants' admission of overlapping no-fault and liability coverage/settlements); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). And Defendants' responsibility has been "demonstrated" with respect to the claims identified on Exhibit A to the Amended Complaint by virtue of no-fault contracts and settlement agreements *admitted and acknowledged to CMS. See* ECF No. 7 at ¶¶ 47-49; *Allstate*, at 835 F.3d 1359-61; *Ace,* 974 F.3d at 1319. Plaintiffs plainly allege that their Assignors—Medicare Advantage Organizations and risk-bearing MSOs and Independent Physician Associations—made payments for accident-related items and services on behalf of the specific beneficiaries identified on Exhibit A to the Amended Complaint. Those payments were conditioned on reimbursement from Defendants, who have not lived up to their statutory payment obligations. *See* ECF No. 7 at ¶¶ 36-39 and 49-52. Plaintiffs economic damages are the natural result of that failure to reimburse, and are pled generally in full compliance with Rule 8, Fed. R. Civ. P. *See Tenet*, 918 F.3d at 1318 ("MSPA alleges a type of economic injury, which is the epitome of 'concrete.'"). Additional information regarding Plaintiffs' damages will be available to the Defendants through the discovery process, including through Rule 26(a)(1) Initial Disclosures (as amended over the course of this litigation) – "itemization of damages is not required to meet the pleading requirements of Rule 8(a)." *McIntosh v. Royal Carribean Cruises Ltd.*, 2019 U.S. Dist. LEXIS 2604, *22 (S.D. Fla. Jan. 4, 2019) *report and recommendation declined on unrelated grounds*, 2019 U.S. Dist. LEXIS 16409, *1 (S.D. Fla. Feb. 1, 2019); *Brown v. Panhandle E. Pipeline Co. L.P.*, 2018 U.S. Dist. LEXIS 141749, *3 n.4 (D. Kan. Sept. 1, 2017) (collecting cases in support of the same proposition); *Campbell v. Equifax Info. Servs., LLC*, Case No. 4:18-cv-53, 2019 U.S. Dist. LEXIS 48999, *14-15 (S.D. Ga. Mar. 25, 2019) ("As to causation and damages, general allegations of harm are sufficient . . . when the complaint as a whole supports the inference that the defendant is liable for the claim.").

What's more, the Eleventh Circuit has recognized Defendants' constructive knowledge *of its liability for every claim identified on the Amended Complaint's Exhibit A. Here, as in *Ace*,

---

[6] Defendants *reported* to CMS as both no-fault and liability insurers. *See* ECF No. 7-1.

> Plaintiffs alleged that they chose which claims to bring by comparing their assignors' claims data against two sets of documents: Defendants' filing with HHS under 42 U.S.C. § 1395y(b)(7)-(9), which obligates insurers like Defendants to report the claims for which they are primary payers, and certain of Defendants' settlement agreements to which [Plaintiffs] had access. The filings with HHS evidence Defendants' knowledge that they owed primary payments, including the primary payments for which Plaintiffs seek reimbursement. For the remaining claims, Defendants' settlement agreements with beneficiaries show, at minimum, that Defendants had constructive knowledge that they owed the primary payments.

*Ace*, 974 F.3d at 1319. Under identical circumstances, the Eleventh Circuit held that "Plaintiffs have plausibly alleged Defendants' actual or constructive knowledge," and rejected efforts to dismiss a similar action under Rule 12(b)(6).

*Ace* bars Defendants' efforts to feign ignorance of the conditional payments at issue and avoid the merits of an action based, in part, on their own admissions of overlapping primary coverage. And *Ace* is not the first time the Eleventh Circuit has rejected primary payers' efforts to manufacture dismissals by reaching to remake the pleading standard applicable to the MSP Act's private cause of action.

Other federal district courts reviewing similar pleadings reached the same conclusion in advance of the Eleventh Circuit's recent dispositive rulings. In *GEICO*, the plaintiffs alleged that "Medicare Beneficiaries suffered injuries and incurred medical expenses which were required to be paid by Defendant but actually were paid by the beneficiaries' MAOs; [and] GEICO entered into settlement agreements with the Medicare beneficiaries; yet Defendant failed to pay or reimburse the Medicare beneficiaries' MAOs for the payments made by the MAOs." *MAO-MSO Recovery II, LLC v. Gov't Employees Ins. Co.*, Case No. PWG-17-711, 2018 U.S. LEXIS 27654, at *37-38 (D. Md. Feb. 21, 2018) (internal quotations omitted); *compare* ECF No. 7 at ¶¶ 2, 3, 36-39, 46-58. The *GEICO* plaintiffs likewise alleged that their assignors paid for accident-related items and services subject to overlapping "PIP, BRB, or Med Pay no-fault coverage" and were not reimbursed by GEICO as mandated under the MSP Act. *GEICO*, 2018 U.S. LEXIS 27654 at *37-38. There, as here and in *Ace,* the plaintiffs identified failures to reimburse conditional payments through analysis of their assignors' claims data and the defendant's (accessible) CMS reporting. The district court found that while "it is true that plaintiffs do not allege exactly what services and supplies any beneficiaries received" their allegations "make it plausible, as opposed to merely possible, that GEICO's insurance coverage would cover such medical expenses stemming from an

automobile accident where its insured was injured or where its insured caused another's injury and GEICO entered into a settlement agreement." *Id.* at *38. In denying the primary payer's motion to dismiss the court emphasized that:

> the level of factual particularity demanded by GEICO at the initial pleading stage of these suits is eye-popping. It all but insists that plaintiffs actually *prove*, rather than simply *plead*, their claims. This far exceeds the language of Fed. R. Civ. P. 8 . . . The amended complaints contain a level of specificity that is sufficient for the court 'to draw the reasonable inference' that the MAOs made payments of medical supplies and services that GEICO, as the primary payer, was obligated to cover; that GEICO made payments on behalf of its insureds pursuant to settlement agreements; and that GEICO failed to pay or reimburse the MAOs, such that GEICO 'is liable for the misconduct alleged.'

*Id.* at *40 (quoting *Iqbal*, 556 U.S. at 678); *see also MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, 2018 U.S. Dist. LEXIS 76852, at 29 (C.D. Cal. May 7, 2018) ("Plaintiffs are not required to include detailed factual allegations regarding individual 'representative' claims for each named defendant so long as plaintiffs allege that they are the assignees of an MAO which has been damaged by one of the named defendant insurance companies.").[7] The same applies here.

Exhibit A to the Amended Complaint is a reflection of the Defendants' own admissions to CMS. The document identifies Plaintiffs' assigned Medicare Beneficiaries on the basis of the primary payer contract numbers *provided by Defendants to CMS*, pursuant to their obligations under 42 U.S.C. § 1395y(b)(7)-(9) and Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007. *See* ECF No. 7-1 (column identify "Contract/Plan #"). And the enrollment date identified generally corresponds to the date of loss for which Defendants' reported primary payer responsibility. *See id.* Further, Plaintiffs make clear in their Amended Complaint that additional information (including payment data) will be made available to Defendants on request.

---

[7] *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, Case No. 217CV02522CASPLAX, 2018 WL 5086623, at *15 (C.D. Cal. Aug. 13, 2018); *MAO-MSO Recovery II, LLC v. Mercury Gen.*, Case No. CV 17-02557-AB (AJWx), 2018 WL 3357493, at *7-10 (C.D. Cal. May 23, 2018); *MSP Rec. Claims, Series LLC v. AIX Spec. Ins. Co.*, Case No. 6:18-cv-1456-Orl-40DCI , 2019 WL 2211092, at*3-5 (M.D. Fla. May 22, 2019); *MSP Rec. Claims, Series LLC v. Progressive Corp.*, Case No. 1:18CV2273, 2019 WL 5448356, at *13-14 (N.D. Ohio Sept. 17, 2019); *MSPA Claims 1, LLC v. Allstate Ins. Co.*, Case No. 17-cv-01340, 2019 WL 4305519, at *5-6 (N.D. Ill. Sept. 11, 2019); *Humana Ins. Co. v. Bi-Lo, LLC*, Case No. 4:18-cv-2151-DCC, 2019 WL 4643582, at *4-5 (D.S.C. Sept. 24, 2019); *MSP Recovery Claims, Series LLC v. Grange,* Case No. 5:19-cv-00219, 2019 WL 6770729, at *27 (N.D. Ohio Dec. 12, 2019); *MSP Recovery Claims, Series LLC v. Phoenix Ins. Co.*, 426 F. Supp. 3d 458, 484-85 (N.D. Ohio 2019).

*See* ECF No. 7 at 15 n.9. Defendants should be more than able to identify their reported instances of primary payer responsibility, as Exhibit A to the Amended Complaint links a specific beneficiary (identified by contract number and for whom additional information is readily available upon request) with a specific defendant (identified by reference to its CMS reporting) and a specific assignor (identified as the "MSP Client"). Indeed, other primary payers in similar actions have been able to readily identify their reported claims and formulate their defenses. *See MSP Recovery Claims, Series LLC v. Amerisure Ins. Co.*, *et al.*, Case No. 17-cv-23961-CIV-Altonaga, ECF No. 97-3 (S.D. Fla.) (detailing the defendants' substantive responses to the Exhibit A claims). Instead, Defendants here stand on procedure in hopes of manufacturing a dismissal. The Court should decline their invitation.

Particularly, Plaintiffs have identified numerous instances where their assignors made accident-related conditional payments subject to recovery in this suit. *See* ECF No. 7, ¶ 48 ("[T]he claims described on Exhibit A were identified by data analysis. Plaintiffs' Assignors made conditional payments . . . . Plaintiffs seek to recovery conditional payments made by Plaintiffs' Assignors on behalf of the specified Enrollees in each of those instances."). Exhibit A to the Amended Complaint provides Defendants with the primary plan numbers that they reported.[8] All claims identified on Exhibit A to the Amended Complaint fall within the scope of the assignment agreements executed by Plaintiffs' Assignors. ECF No. 7, ¶ 18. The claims identified on Exhibit A "do not appear on the carve out lists" and have been assigned to Plaintiffs. *Id.* at ¶ 25. Having reported, there is no question that Defendants are in possession of the facts of the underlying accidents and had, at minimum, constructive knowledge of the secondary payments now sought to be collected. *See ACE*, 974 F.3d at 1319.

The economic damages alleged here flow directly from Defendants' numerous failures to reimburse Plaintiffs' assignors for services rendered to Medicare beneficiaries. Exhibit A to the Amended Complaint links a specific beneficiary (identified by contract number and for whom additional information is readily available upon request) with a specific defendant (identified by

---

[8] This data is based on information disclosed by various of Defendants' subsidiaries and corporate affiliates to third-party insurance claims databases. However, because some entities listed in the databases were disclosed generically, i.e., "American National Ins." or "American National Property," Plaintiffs allege that it is impossible, without further discovery, to determine which specific American National entity is responsible for the insured in each case.

reference to its CMS reporting)[9] and a specific assignor (identified as the "MSP Client"). As the MAO or downstream payer for those enrollees, Plaintiffs' assignors were fully responsible for their respective enrollees' accident-related medical expenses. *See* ECF No. 7, ¶¶ 3, 17-19, 38-39. Indeed, Plaintiffs' assignors and the putative Class Members provided Medicare benefits to the Enrollees. *Id.* at ¶¶ 38, 75. In numerous instances, Enrollees suffered injuries in connection with an accident, and Plaintiffs' assignors paid for accident-related medical expenses. *Id.* Plaintiffs' standing is clear.

**B.    Plaintiffs have Appropriately and Sufficiently Pled Their Right to Recover *All* Damages Caused by Defendants' Systematic Failures to Reimburse Medicare Payments.**

Defendants have been placed on notice of this class action proceeding and the number of Medicare claimants identified as at issue since the inception of the litigation. Plaintiffs have attached their Exhibit A to the Amended Complaint, which specifically identifies the instances whereby Defendants have reported primary responsibility on behalf of the specific claimant listed. *See* ECF No. 7-1. But primary payers "often take steps to ensure that the burden of those accident-related medical expenses is borne by Medicare and MAOs." *Id.* at ¶ 6. Plaintiffs allege, upon information and belief, that Defendants "ha[ve] failed to report [their] primary payer responsibility and failed to pay and/or reimburse one or more of the conditional payments made by Plaintiffs' Assignors." *Id.* at ¶ 30. And Plaintiffs (and their Assignors) have only limited access to primary payer reporting data and additional sources of relevant information, like police crash and incident reports. *Id.* at ¶¶ 36-37. Consistent with Plaintiffs' allegations, "HHS and Congress have

---

[9] To the extent Defendants reported under a generic reporting name but now demand greater precision is required in identifying the responsible payer for Plaintiffs' claims, then the Central District of California's decision in *Farmers* provides the path forward. *MSP Recovery Claims, Series LLC v. Farmers Ins. Exchange*, Case No. 2:17-cv-02522, 2018 WL 2106467, at *9 (C.D. Cal. May 7, 2018). There, the district court "recogniz[ed] the difficulty faced by plaintiffs in seeking to identify the proper defendants" due to the insurance companies' generic reporting practices, and ordered an "exchange of insurance claims data" to confirm that Plaintiffs had a claim against each named defendant. *Id.* The court expressly requested that the plaintiffs trace an injury to each defendant with a simple allegation that "they are the assignees of an MAO which has been damaged by one of the named defendant insurance companies." *Id.* at *10 ("Plaintiffs are not required to include detailed factual allegations regarding [] 'representative' claims. . .."). Rather than dismiss the case, though, the court ordered the defendants to identify the proper underwriter for all of the parties' overlapping claims. And the plaintiffs alleged each defendants liability by virtue of a simple exhibit similar to Exhibit A to the Amended Complaint here. The *Farmers* rationale applies here and supports inclusion of each named defendant.

repeatedly flagged Medicare's inability to ascertain the existence of alternative sources of coverage as a weakness in the secondary payer program." *Baxter*, 345 F.3d at 901 n.30. Under the circumstances, the Exhibit A claims demonstrate Plaintiffs' clear standing to proceed against the Defendants, but damages caused by Defendants' failures to investigate and reimburse conditional payments made by Medicare Advantage plans inevitably exceed the two exemplar claims.

In *Baxter*, the Eleventh Circuit considered and rejected the primary payer's almost identical attempt to limit the scope of the government's pleading. There, the United States brought an action to recover all unreimbursed payments Medicare made on behalf of Medicare beneficiaries who were harmed by a defective product. *Baxter*, 345 F.3d at 872. Because the government did not know which beneficiaries had settled with the tortfeasor/primary payer, the complaint was short on particulars, and did not specifically allege every instance where the defendant settled with a Medicare beneficiary but failed to reimburse Medicare's conditional payments. The district court dismissed on that basis and the Eleventh Circuit reversed, finding that the "pleading standards urged by the" defendants and adopted by the district court were "akin to the heightened requirements of Fed. R. Civ. P. 9," which would "run counter to the intent of the MSP statute," and "given the benefit of discovery, it appears not only possible but in fact inevitable that the Government will turn up a number of claims eligible for reimbursement." *Id.* at 884-85 (emphasis added).

The Eleventh Circuit recognized the difficulties inherent in alleging MSP Act claims, where "crucial information" is necessarily "outside the Government's control." *Baxter,* 345 F.3d at 884-85. Although the Government might have been able to arrive at a "rough approximation" of the specific instances at issue, the *Baxter* defendants had "access to: (1) the names of the approximately 400,000 registered potential claimants, and (2) the approximately 81,000 people whose claims, to date, have been deemed worthy of payment." *Id.* at 883. Consequently, this Court held that the government was not required to allege the details of any particular claim. While *Baxter* predated *Twombly* and *Iqbal*, nothing in those two opinions spoke to the plaintiff's inherent information deficit in *Baxter*, which still persists.

There is no good reason to hold the assignees of Medicare Advantage plans to a different standard than the government when it comes to pursuing MSP Act recoveries. Plaintiffs here have detailed an injury-in-fact caused by the Defendants' failure to meet its reimbursement obligations. *See MSPA Claims 1, LLC v. Tenet*, 918 F.3d 1312, 1318 (11th Cir. 2019). "[A] complaint governed

by the ordinary standard of Rule 8—and there is no dispute that Rule 8 applies here—need not allege the particulars of each instance of injury in order to survive a motion to dismiss." *Baxter*, 345 F.3d at 883-84; *McIntosh v. Royal Caribbean Cruises Ltd.*, Case No. 17-23575, 2019 U.S. Dist. LEXIS 2604, *22 (S.D. Fla. Jan. 4, 2019) ("itemization of damages is not required to meet the pleading requirements of Rule 8(a)" (quoting *Brown v. Panhandle E. Pipeline Co. L.P.*, 2017 U.S. Dist. LEXIS 141749, at *1 (collecting cases)). Further, Plaintiffs identified many instances where the Defendants reported overlapping coverage for assigned Medicare beneficiaries but failed to reimburse Plaintiffs or their assignors. It is not merely possible "but in fact inevitable" that Plaintiffs will have a number of claims against Defendants – Plaintiffs' right to pursue those claims is properly pled here.

Asking this Court to retreat from *Baxter*, Defendants point to a series of breach of contract and PIP coverage denial cases from the Eastern and Southern Districts of New York to suggest that Plaintiffs' damages should be severed or separately and particularly pled. *See* ECF No. 24, at 14. But this is not a PIP case. Defendants' liability is not based on the facts surrounding distinct automobile accidents, which led to payment denials for a host of varying reasons, implicating disparate policy provisions. *Contra Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*, 2004 U.S. Dist. LEXIS 13243, *5-6 (S.D.N.Y. Jul. 15, 2004). Defendants' liability here springs from a "remarkably simple" federal statute that requires reimbursement of conditional payments whenever "one of the statutorily enumerated sources of primary coverage could pay instead." *Baxter*, 345 F.3d at 888.

Defendants' uniform conduct of not investigating, reporting, identifying, and reimbursing secondary payers damaged Plaintiffs' assignors in a similar way, even if the amounts may vary from claim to claim. The Supreme Court has made clear that the joinder of claims is distinct from the "rigorous" standard for class certification under Rule 23(a). *Hussein El Fakih v. Nissan N. Am. Inc.*, Case No. 18-cv-60638, 2018 U.S. Dist. LEXIS 219065, *7 (S.D. Fla. July 26, 2018) (citing *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982)). Indeed, "because the purpose of Rule 20 is for courts to entertain 'the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *McIntosh*, 2019 U.S. Dist. LEXIS 2604 at *17. There can be no question of fairness, here, where the Defendants had every opportunity to determine its claimants' Medicare Advantage status and provide for reimbursement but instead hung back allowing MAOs to foot the bill for covered services.

Contrary to Defendants' assertions, joinder of claims is subject to a low bar, there are two prerequisites that must be met: (1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences and (2) some question of law or fact common to all persons seeking to be joint." *Hussein*, 2018 U.S. Dist. LEXIS 219065 at *6 (quoting *Alexander v. Fulton Cty. Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000)). The term "transaction is a world of flexible meaning that [it] may comprehend a series of many occurrences, depending not as much upon the immediateness of their connection as upon their *logical* connection." *Id.* at *6-7 (quoting *Alexander*, 207 F.3d at 1323) (emphasis added). And to satisfy "the commonality prong, all that is required is that the plaintiffs share a single common question of law or fact." *Id.* (citing *Alexander*, 207 F.3d at 1324). There is no question that Defendants' systematic failure to identify and reimburse secondary payments concerns common questions of law and fact as to Defendants' primary payer status and failure to meet its payment obligations to all of Plaintiffs' assignors. *See McIntosh*, 2019 U.S. Dist. LEXIS 2604 at *21 ("While the [d]efendant is correct that the SAC lumps together all of the Plaintiffs' injuries and fails to identify which injuries correspond to which Plaintiff or group of Plaintiffs, the applicable Federal Rules do not require . . . greater specificity in pleading injury allegations in complaint . . . In addition, although there are multiple plaintiffs asserting claims individual in the SAC, the allegations related to the [d]efendant's purported negligent conduct are the same with regard to each Plaintiff . . . the SAC therefore provides enough information . . . ."); *Hussein*, 2018 U.S. Dist. LEXIS 219065 (endorsing joinder where the plaintiffs were separately damaged by a series of many logically connected transactions involving the sale of defective vehicles).

In fact, other federal courts have already reviewed and rejected the same strained efforts to sever. In *Farmers*, the Central District of California adopted Plaintiffs' position, finding that "plaintiffs' claims arise of the same series of transactions or occurrences" because "properly construed, the complaint[] allege[s] that defendants are engaged in a systematic patter of failing to reimburse MAOs for conditional Medicare payments." *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, No. 2017cv02522CASPLAX, 2018 WL 5086623, at *10 (C.D. Cal. Aug. 13, 2018). The *Farmers* court further concluded that "there are numerous common questions of law relating to the MSP provisions of the Medicare Act and factual issues regarding defendants' failure to make payments required by law." *Id.*

11

Farmers went onto argue that the plaintiffs should not be allowed to discover the true scope of Farmers' failure to reimburse conditional payments to plaintiffs' assignors – a process that requires a simplistic matching of names and an exchange of confirmatory data from the primary plan. Through briefing and hearing before a special master (who was a former magistrate judge in the Central District of California), the special master rejected the defendants' arguments. That exchange of basic claim information disclosed more than 150 additional instances of injury caused by the defendants' failures to reimburse the plaintiffs' assignors than could have been previously detected. *See Farmers*, 17-cv-02522, C.D. Cal., ECF Nos. 266 and 269.

And even if such arguments were relevant here, numerous courts have agreed with Plaintiff's position, which is why at least seven similar actions have advanced into a data matching process intended to identify the full universe of claims (reported and unreported) between the parties, and give way to consensus on amounts owed.[10] In contrast, Defendants fail to point to a single instance where a district court has taken such a restrictive approach to Plaintiff's damages at the pleading stage.

The process does not turn on "gotcha" information, but utilizes standard data points primary payers are obligated to maintain and produce pursuant to 42 C.F.R. 411.25.  *See* 59 Fed. Reg. 20 at 4287 (listing the information primary payers must maintain and produce to Medicare carriers when they learn of a secondary payer situation). And the effectiveness of the process is

---

[10] *See, e.g., MSP Recovery Claims, Series LLC v. Covington Spec. Ins. Co.*, Case No. 19-21583, ECF No. 87 (S.D. Fla. May 21, 2020) (making clear that the data discovery sought from the defendant was electronically stored, readily available, and not burdensome, and was directed toward identifying the full extent of the plaintiffs injury); *MAO-MSO Recovery II, LLC v. GEICO*, Case Nos. 17-cv-711-PWG, 17-cv-PWG, ECF No. 92 (D. Md. Apr. 16, 2019); *MSP Recovery Claims, Series LLC v. Farmers Ins. Exch.*, Case No. 17-cv02522-CAS-PLAx, ECF No. 170 (C.D. Cal. Mar. 4, 2019); *MSP Recovery Claims, Series LLC v. Mercury Gen.*, Case Nos. 17-cv-02525-AB (AFMx), 17-cv-02557-AB (AFMx), ECF No. 224 (C.D. Cal. July 29, 2019); *MSPA Claims 1, LLC v. Allstate Ins. Co.*, Case No. 1:17-cv-01340, ECF No.134 (N.D. Ill. May 18, 2020) (in the defendant's words: "The Parties are, per their agreement previously disclosed to the Court, in the process of collecting and submitting data to a third-party vendor . . . The data matching process should allow the parties to identify the specific claims at issue in this case, without prejudice to any defenses Allstate may have with respect to those claims."); *MSP Recovery Claims, Series LLC v. Grange Ins. Co.*, Case No. 5:19-cv-00219, ECF No. 36 (N.D. Ill. Dec. 16, 2020) (joint motion noting that the parties reached a data matching agreement that "contemplates a phased process whereby the Parties exchange demographic, date of loss, and payment data intended to attempt to identify the universe of claims that [d]efendant settled with a Medicare beneficiary, whose medical expenses related to that claim were paid by [p]laintiffs' assignors.").

the reason that Plaintiffs recently reached a class-wide settlement with Ocean Harbor Casualty Insurance Company (the principal case relied upon by Defendants in their quest to manufacture a demand letter requirement). *See MSPA Claims 1, LLC v. Ocean Harbor Casualty Ins. Co.*, Case No. 2015-1765-CA, 11th Judicial Circuit, Class Action Settlement Agreement (attached hereto as Exhibit B). There can be little question that aggregation is appropriate and preferred where the damages at issue can be understood through a uniform methodology applied across readily available historical data. *See, e.g., MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, Expert Report of Dan Regard, D.E. 66; *see also Mercury*, 17-cv-02525-AB (AFMx), 17-cv-02557-AB (AFMx), D.E. 277-8. Defendants fail to recognize that this case is effectively an accounting reconciliation – it is not a RICO claim subject to Rule 9. Defendants' theories on the applicable pleading standard should be rejected in their entirety.

**C.     MSPRC has Unmistakably Alleged Standing to Recover Against the Defendants.**

Defendants next contend that Plaintiff lacks standing because its designated series, and not the Plaintiff MSPRC, were actually assigned the exemplar claims. Defendants' argument fails to persuade as it misstates Delaware law and ignores the Complaint's specific allegations regarding Plaintiff's limited liability company agreements. Title 6, § 18-215 of the Delaware Code provides that "[a] limited liability company agreement may establish or provide for the establishment of one or more designated series of . . . limited liability company interests or assets." Del. Code Ann. Tit. 6, § 18-215(a). And a "protected series shall have the power and capacity to, in its own name. . . sue and be sued," except as "otherwise provided in a limited liability company agreement." 6 Del. Code § 18-215(b)(1). Sections 18-215(a)-(b) thus make clear that the relationship between protected series interests and their master Series LLC is dictated by the terms of the relevant limited liability company agreement.

Plaintiffs allege, and Defendants ignore, the precise terms of the limited liability company agreement which establishes Plaintiffs' standing to sue:

> Without limiting the foregoing, the Company's purposes include owning and pursuing claims recovery and reimbursement rights assigned to the Company or any of its designated series, by Medicare Advantage Organizations . . . <u>The Company will own the assigned rights but may segregate the assignments by establishing series interests pursuant to Title 6, §18-215 of the Delaware Code to serve as units of the Company. For avoidance of doubt, the Company is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of, an assignment to a designated series.</u>

ECF No. 55 at ¶ 40 (quoting Section 2 of Second Amendment of Limited Liability Company Agreement of MSP Recovery Claims, Series LLC (amending Section 2.3, entitled "Purpose," to include the language quoted above)) (emphasis added). Defendants have raised no grounds to undermine these allegations, or create a factual issue – accordingly the allegations should be taken as true and sufficient to support Plaintiff's standing to proceed. The Eleventh Circuit found Defendants' argument to be *"meritless." ACE*, 974 F.3d at 1320. In agreeing with MSPRC on all issues, the *ACE* court held that "[d]epending on how MSPRC's relationships with its affiliated series LLCs are structured, MSPRC may have the same rights as or rights separate from the series LLCs with respect to the assignments." *Id.* at 1319–20. Because MSPRC's limited liability company agreement is structured to allow MSPRC to assert rights assigned to its designated series, MSPRC is entitled to pursue the claims at issue here. *See id.* at 1319 ("we accept as true MSPRC's allegation that it has the right to bring claims under the proffered [LLC Agreements]."); *Farmers*, No. 217CV02522CASPLAX, 2018 WL 5086623, at *13 (finding MSPRC's allegations sufficient and noting that the "operating agreement [] provides in pertinent part that 'the Company is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of, an assignment to a designated series.'"); *Grange*, 2019 U.S. Dist. LEXIS 214201 at *25-26 (finding the Court was compelled to hold that Plaintiff set forth sufficient allegations where, as here, "Plaintiffs do make [the] specific allegation in the Complaint" that under its limited liability company agreement "[MSPRC] will maintain the right to sue on behalf of each series and pursue any and all rights, benefits and causes of action arising from assignments to a series."); *One Beacon*, Case No. 6:20-cv-553-Orl-37EJK, slip op. at 6 (holding that "this argument fails" because Plaintiff and its series are permitted to bring these claims as part of its organizational structure); *see also* ECF No. 7 at ¶¶ 12, 20 and App'x 2 at ¶ 1..

Finally, Defendants are concerned that, although cited directly, MSPRC's Limited Liability Company Agreement was not attached to the Amended Complaint. In the interest of quelling any concerns Defendants might have regarding "less than accurate representations," Plaintiffs have included the Second Amendment to the Limited Liability Company Operating Agreement, dated May 5, 2017, as Exhibit C to this Response. Its contents are precisely as alleged by Plaintiffs. *See* Ex. C at § 3(d).

**D.    Count II States a Claim for Relief.**

Defendants' arguments regarding 42 C.F.R. § 411.24(e) also fail to persuade. MAOs are specifically allowed to "exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercise under the MSP regulations." 42 C.F.R. § 422.108(f); *see also* ECF No. 7 at ¶ 3. As such, courts have addressed and rejected Defendants' arguments from top to bottom– the same is warranted here. *See State Farm*, 2018 U.S. Dist. LEXIS 117356 at *20-21 ("[The defendant's] argument is unpersuasive, for '[w]here a statute provides for enforcement through a private cause of action, a regulation may also be enforced in the same way.'); *Mercury Gen.*, 2018 U.S. Dist. LEXIS 192294 at *35; *MSPA Claims 1, LLC v. Covington Spec. Ins. Co.,* Case No. 19-21583-Williams/Torres, 2020 U.S. Dist. LEXIS 84000, at *36-38 (S.D. Fla. May 12, 2020), *report and recommendation adopted* Case No. 19-21583-Williams/Torres, ECF No. 115 (holding that "because Congress expressly created a right of action in the MSP Act and the statute's accompanying regulations include rights-creating language" Plaintiffs are authorized to and have sufficiently stated a claim under 42 U.S.C. § 411.24(e)). Further, Defendants' third-party beneficiary arguments find no support in fact or law. *See id.* (rejecting the same argument "because state contract principles are preempted under the MSP Act, [and] there is [thus] no requirement for plaintiff to allege that it was a third-party beneficiary to pled a breach of contract claim."); *see also Allstate*, at 835 F.3d 1359-61.

Further, Defendants reliance on *Parra v. Pacificare of Arizona, Inc.*, 715 F.3d 1146 (9th Cir. 2013); and *Ferlazzo v. 18th Ave. Hardware, Inc.,* 929 N.Y.S. 2d 690 (N.Y. Sup. Ct. 2011) is misplaced. *Parra* did not concern a claim under the MSP Act by a MAO against a primary payer. That case considered only whether a separate statutory section concerning HMOs (42 U.S.C. § 1395mm(e)(4)) impliedly created a private cause of action separate and apart from § 1395y(b)(3)(A) – its ruling and analysis have nothing to do with this case. And *Ferlazzo* is likewise inapposite, as the Eleventh Circuit has made abundantly clear that MAO payments are required to be reimbursed by overlapping primary plans in all circumstances – and that an MAO may pursue double damages under the MSP Act's private cause of action when reimbursement is not received.

**E.    Defendants' Insistence on a Pre-Suit Demand Letter has been Rejected by the Eleventh Circuit and the Department of Health and Human Services.**

Defendants contend that the Amended Complaint is somehow defective because Plaintiffs failed to send a pre-suit demand letter in accordance with Florida's No-Fault Statute (§

627.736(10), Fla. Stat). As an initial matter, the statute, by its terms, does not apply here: Section 627.736(10) applies "only to [actions] for benefits under [that] section," and is irrelevant to a claim under a completely independent MSP Act private cause of action. Further, Defendants' argument conflicts with the Eleventh Circuit's recent decision in *Kingsway*, and was squarely rejected by HHS, the federal agency that administers the Medicare program and Medicare Secondary Payer regulations. This is not a PIP lawsuit, despite Defendants' strong desire to make it such.  There is no demand letter requirement.

In *Kingsway*, the Eleventh Circuit considered and rejected a similar attempt to require private plaintiffs and secondary payers to present claims to primary plans as a precondition to suit under § 1395y(b)(3)(A).  *Kingsway*, 950 F.3d at 772-76.  In that case, the primary plan argued that the claim-filing provision, § 1395y(b)(2)(B)(vi), imposed an additional prerequisite to an MAO's suit under the private cause of action – that is, "if an MAO doesn't seek reimbursement from a primary plan within three years of the date on which the beneficiary received treatment, it can't later sue that plan to recover."  *Id.* at 772. The Eleventh Circuit declined the defendants request to read a pre-suit demand requirement into the MSP Act, and confirmed that it has recognized *only two limits* on the private cause of action: the first is demonstrated responsibility ("Until responsibility is 'demonstrated,' therefore, the 'obligation to reimburse Medicare does not exist' and it can't be said that the primary plan—as required by the private cause of action's language— 'failed' to provide appropriate reimbursement."), and the second is that a private plaintiff may only sue primary plans and not other entities such as medical providers.  *Id.* at 771. Nothing more is required.

The plain language and structure of the MSP Act required a holding that submitting the claim to a primary plan *is not* a prerequisite to suit. *Id.* at 772-74. There is no question that Congress was fully aware of how to reference a claim presentment or demand letter requirement, *see* 42 U.S.C. § 1395y(b)(2)(B)(vi), but left any such precondition out of the private cause of action's straightforward text. In interpreting the MSP Act's private cause of action, the Eleventh Circuit has noted that "[w]here Congress demonstrates awareness of an issue by expressly addressing it in one provision, silence on the issue in a similar provision is presumed to be intentional." *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, at 1321 (11th Cir. 2019). And that intent and "the rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to [Medicare Advantage] plans [like Plaintiffs' assignors]."

42 C.F.R. 422.108(f); *see also* 42 U.S.C. § 1395w-26(b)(3) ("the standards established under this part supersede any State law or regulation with respect to the [Medicare Advantage] plans that are offered by [MAOs]."); 42 C.F.R. 411.24(f) ("CMS may recover without regard to any claims filing requirements that the insurance program or plan imposes on the beneficiary or other claims . . ."). Defendants' arguments are clearly preempted.

Further, and importantly, HHS recently addressed this precise issue in response to the Eleventh Circuit's request for an Amicus Brief expressing the Agency's views "regarding the proper interpretation of 42 U.S.C. § 1395y(b)(3)(A)" in the consolidated appeal lead by *MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, Case No. 18-12139. The record on appeal there includes the dismissal order entered in *MSP Recovery Claims, Series LLC v. Auto-Owners Inc. Co.*, Case No. 17-cv-23841-PAS, which concerned reimbursement obligations deriving from *both* settlements and *Florida no-fault policies*. In response to *Auto-Owners'* almost identical demand letter arguments, HHS observed that "the defendants appear to misunderstand the regulations governing their payment obligations, asserting that the requirement to reimburse Medicare is not triggered unless Medicare sends a demand letter." Exhibit D, HHS Brief at 18 n.4. "This is incorrect." *Id.* (emphasis added). Instead, the primary plan's reimbursement obligation is *actually* triggered whenever the plan has constructive knowledge of a Medicare payment. *Id.*; *Baxter Int'l, Inc.*, 345 F.3d at 901-02. The *Ace* court agreed, holding that the [d]efendants point to no law that obligated Plaintiffs to submit 'recovery demand letters' or otherwise provide advance notice of their intent to bring a claim. Although primary payers must have knowledge that they owed a primary payment before a party can claim double damages under the [MSP Act], Plaintiffs plausibly alleged that [d]efendants had such knowledge." *ACE*, 974 F.3d at 1319 and 1315 ("We afford HHS' well-reasoned and considered interpretation of § 1395y(b)(3)(A) *Skidmore* deference . . .").

The Eleventh Circuit has addressed constructive knowledge for the purposes of an action to recover under the MSP Act at length, and it is settled that no demand letter is needed where a primary payer settles a claim or reports its primary payer responsibility to CMS. *See Baxter*, 345 F.3d at 901 ("[W]hen the primary insurer later pays, Medicare's prior payment will normally be a matter of ascertainable fact."); *W. Heritage*, 832 F.3d at 1239 (As a settling party, or no-fault insurer dealing with a no-fault claimant, Appellees "had the ability to discern the precise nature of [the Medicare beneficiary's] health insurance coverage"); *ACE*, 974 F.3d at 1319. Defendants

cannot remain willfully blind to their obligations by failing to ask readily accessible no-fault and liability claimants about their Medicare Advantage coverage during the claim review process, and then turn and shield themselves from liability behind a PIP demand letter requirement that has nothing to do with the primary plan's federal statutory payment obligation.

The demand letter argument is yet another offshoot of Defendants' unwavering commitment to reading limitations, restrictions, and preconditions into a cause of action that threatens no-fault and liability insurers' bottom lines. The history of these cases before the Eleventh Circuit demonstrates clearly that primary payers are unwilling to give effect to the Statute's plain terms – it is against their financial interests to do so. Plaintiffs' MSP Act claims are federal claims, governed by a federal statute that "supersede[s] any State laws, regulations, contract requirements or other standards." 42 C.F.R. § 422.108(f). The Court should reject Defendants' continuing efforts to graft unsupported PIP requirements onto § 1395y(b)(3)(A)'s "remarkably simple" terms.

## F.     Defendants' Class Action Attacks Are Premature.

Motions to strike class allegations at the pleadings stage are highly disfavored in this Circuit, as a "motion for class certification is a more appropriate vehicle" for such considerations following the "rigorous analysis" called for under Rule 23. *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1351-1352 (S.D. Fla. 2013); *Martorella v. Deutsche Bank Nat'l Tr. Co.*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013); *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 Fed. Appx. 930, 936 (11th Cir. 2016) (holding that "the district court should have allowed limited discovery instead of striking the class allegations based solely on the face of the complaint" because the "Supreme Court has emphasized that class certification is an evidentiary issue"); *Oginski v. Paragon Props. of Costa Rica, LLC*, 2011 WL 3489541, at *3 (S.D. Fla. Aug. 9, 2011) ("[d]ismissal at this stage is an extreme remedy appropriate only where a defendant demonstrates 'from the face of [the] complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove.'"). Recognizing that fact, at least one Judge in this district has denied an indistinguishable request to strike class allegations holding that "because the evidentiary record has not yet been developed, the Court cannot yet make a rigorous analysis." *MSPA Claims 1, LLC v. Century Surety Co.*, Case No. 16-cv-20752-DPG, 2017 WL 998282 (S.D. Fla. Mar. 15, 2017) (Gayles, J.). Defendants Motion should be denied because they plainly cannot demonstrate that it will be impossible to

certify the classes alleged regardless of the facts Plaintiffs may be able to prove. *Romano v. Motorola*, Inc., 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007).

### a.      Plaintiffs Define Ascertainable Classes.

Defendants claim that the proposed class definitions are unascertainable. D.E. 18  at pp. 18-20. Not true. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014). Contrary to Defendants' arguments, the class definition uses objective criteria, i.e., class members must be: (1) MAOs (2) that made payments for medical services provided to a Medicare enrollee for its injuries, (3) for which the Defendants had the primary payment responsibility; (4) by virtue of their contractual obligation or settlement with that Medicare enrollee for those medical services; (5) after which the Defendants did not reimburse the MAO.  *See* ECF No. 7 at ¶¶ 69-70. Accordingly, the class definitions do not describe a "fail-safe class," which is one "where the proposed class definition employs conclusory language identifying class membership in terms of the ultimate merits question of the defendant's liability." *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 693 (S.D. Fla. 2015) (citations omitted). Rather, the actual class definition proposed is based on clear and ascertainable criteria.

Further, and importantly, Defendants' argument is not a basis for dismissal.  Courts faced with "fail-safe class" definitions should not simply dismiss the class claims, but instead "may revise or permit the plaintiff to cure the flawed definitions." *Alhassid*, 307 F.R.D. at 694 (citations omitted).

### b.      At This Stage in the Proceeding Defendants Cannot Possibly Demonstrate an Absence of Predominance.

Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). The predominance inquiry is only proper <u>after</u> Plaintiffs have completed at least some discovery, and moved for class certification. *See Herrera*, 648 F. App'x at 936; *Horizon*, 955 F. Supp. 2d at 1352. Defendants raise the specter of "individual" issues that it claims are important for this lawsuit, but those assertions are merely speculative claims made in a vacuum untested against (necessary) class discovery.  And such discovery is underway in numerous other matters and has given way to expert analysis showing a sound methodology for utilizing easily accessible common data between the parties to identify liability and calculate damages on a class-wide basis.  *See, e.g., MSPA Claims*

*1, LLC v. Tower Hill Prime Ins. Co.,* Expert Report of Dan Regard, D.E. 66; *see also Mercury*, 17-cv-02525-AB (AFMx), 17-cv-02557-AB (AFMx), D.E. 277-8; *see also* Section B, *supra*. It makes perfect sense that the overwhelming majority of district courts to consider similar arguments have denied challenges to Plaintiffs' class allegations out-of-hand.[11] Importantly, the *Ocean Harbor* matter relied upon by Defendants has since been resolved by virtue of a *class-wide settlement*.

The Motion for Class Certification recently filed in *Mercury General* and attached hereto as Exhibit E highlights the importance class discovery in this case – and the straightforward nature of Defendants' liability class-wide. Defendants' attempt to preemptively shut the door on class certification at the motion to dismiss stage is improper and should be denied.

### CONCLUSION[12]

For the foregoing reasons, Defendants' Motion to Dismiss, (ECF No. 24), should be denied in its entirety, and Defendants should be ordered to promptly answer the operative Complaint, (ECF No. 7).

Dated: January 19, 2021

Respectfully submitted,

**MSP RECOVERY LAW FIRM**
2701 S. Le Jeune Rd.
10th Floor
Coral Gables, Florida 33134
Telephone: (305) 614-2222

---

[11] *MSPA Claims 1, LLC v. Allstate Ins. Co.*, No. 17-cv-01340, 2019 WL 4305519, at *8 (N.D. Ill. Sept. 11, 2019); *MSP Recovery Claims, Series LLC v. AIX Specialty Ins. Co.*, No. 6:180-cv-1456-Orl-40DCI, 2019 WL 2211092, at *4 (M.D. Fla. May 22, 2019); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto Ins. Co.*, 1:17-cv-01537-JBM-JEH, 2018 WL 3420796, at *11 (C.D. Ill. July 13, 2018); *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, No. 17-2522, 2018 WL 2106467, at *11 (C.D. Cal. May 7, 2018); *MAO-MSO Recovery II, LLC v. Government Employees Ins. Co.*, No. 1:17-cv-00711, 2018 WL 999920, at *14 (D. Md. Feb. 21, 2018). Defendants ignore these decisions and instead ask the Court to rely on one outlier decision to dismiss Plaintiffs' class allegations. *See MSP Recovery Claims, Series LLC & Series 17-04-631 v. Plymouth Rock Assurance Corp.*, 404 F. Supp. 3d 470 (D. Mass. 2019).

[12] Although Plaintiffs allegations are sufficient to survive a Rule 12(b) motion, Plaintiffs request this Court to allow Plaintiffs to amend the complaint should this Court find a pleading deficiency. Separately, Defendants' Motion is devoid of any basis justifying a dismissal with prejudice. And to the extent Defendants' jurisdictional arguments are found legitimate—which they are not—a dismissal for lack of subject matter jurisdiction must be entered without prejudice. *See Ace*, 974 F.3d at 1316-17.

*/s/* John H. Ruiz
John H. Ruiz
Fla. Bar No. 928150
jruiz@msprecoverylawfirm.com
Michael O. Mena
Fla. Bar No. 010664
mmena@msprecoverylawfirm.com
Secondary:serve@msprecoverylawfirm.com

**Armas Bertran Zincone**
4960 SW 72nd Avenue, Suite 206
Miami, Florida 33155
Telephone: (305) 461-5100

*/s/ Francesco A. Zincone*
Alfredo Armas
Fla. Bar No. 100096
alfred@armaslaw.com
nmarrero@armaslaw.com
barbi@armaslaw.com
Eduardo Bertran
Fla. Bar No. 100096
ebertran@armaslaw.com
Francesco Zincone
Fla. Bar No. 100096
fzincone@armaslaw.com

**Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I certify that on January 19, 2021, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

*/s/ Francesco A. Zincone*
Francesco Zincone

21