UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-24077-CIV-ALTONAGA/Torres

MSP RECOVERY CLAIMS,
SERIES LLC,

      Plaintiff,

v.

AMERICAN NATIONAL
PROPERTY & CASUALTY CO.,

      Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, American National Property & Casualty Company's Motion for Summary Judgment [ECF No. 59], filed on June 11, 2021. Plaintiff, MSP Recovery Claims, Series LLC filed a Response in Opposition [ECF No. 70], to which Defendant filed a Reply [ECF No. 72] with supporting exhibits (*see* [ECF No. 72-1–72-3]).[1] The Court has carefully considered the Second[2] Amended Class Action Complaint ("SAC") [ECF No. 36], the parties' written submissions,[3] the record, and applicable law. For the following reasons, the Motion is granted.

---

[1] Plaintiff also filed a Sur-Reply [ECF No. 76-1], to which Defendant filed a Sur-Sur-Reply [ECF No. 78] with a supporting exhibit [ECF No. 78-1].

[2] Plaintiff erroneously titled the operative complaint as the "First Amended Class Action Complaint," despite it being Plaintiff's third attempt.  (*See* SAC; First Am. Compl. [ECF No. 7]; Compl. [ECF No. 1]).

[3] The parties' factual submissions include: Defendant's Statement of Material Facts ("Def.'s SOF") [ECF No. 60] with supporting exhibits (*see* [ECF Nos. 60-1–60-2]); Plaintiff's Response to Defendant's Statement of Material Facts ("Pl.'s Resp. SOF") [ECF No. 69] with supporting exhibits (*see* [ECF Nos. 69-1–69-5]); and Defendant's Reply to Plaintiff's Statement of Additional Facts ("Def.'s Reply SOF") [ECF No. 73].

CASE NO. 20-24077-CIV-ALTONAGA/Torres

## I.     BACKGROUND

*The Medicare Secondary Payer Act ("MSP Act")*.   Medicare contracts with private entities — Medicare Advantage Organizations ("MAO") and other downstream actors (collectively "Medicare Advantage Plans") — to pay certain Medicare beneficiaries' healthcare costs. *See MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1308 (11th Cir. 2020).  The MSP Act made Medicare coverage secondary to other forms of insurance. *See id.*  In the event a Medicare beneficiary has overlapping coverage arising from Medicare and another insurer, Medicare Advantage Plans may make payments on behalf of beneficiaries to healthcare providers — but the insurer, as primary payer, must reimburse the Plans for these conditional payments. *See id.* at 1308–09.  Overlapping coverage can occur when, for example, a Medicare beneficiary is injured in an accident (automobile or otherwise) involving a party insured by a liability or no-fault insurance policy  — if the circumstances and policy obligate the primary payer to cover the beneficiary's healthcare. *See id.*

The MSP Act provides mechanisms to help ensure Medicare is not saddled with costs that should be covered by primary payers, two of which are relevant here.  First, liability and no-fault insurers must report to the Center for Medicare & Medicaid Services ("CMS") when they may have primary payer responsibility for the healthcare costs of Medicare beneficiaries. *See* 42 U.S.C. § 1395y(b)(8).  Second, the MSP Act creates a cause of action against primary payers that fail in their obligation to reimburse Medicare (or Medicare Advantage Plans) for conditional payments made on behalf of Medicare beneficiaries. *See id.* § 1395y(b)(3)(A); *see also ACE Am. Ins. Co.*, 974 F.3d at 1316 (holding any MAO or downstream entity suffering unreimbursed conditional payments may bring claims under section 1395y(b)(3)(A)).

*The Complaint*.   Numerous Medicare Advantage Plans assigned Plaintiff certain of the

2

Plans' unreimbursed conditional payment claims against primary payers.[4]  (*See* SAC ¶¶ 3, 9). Plaintiff filed this putative class action against the insurer-Defendant, bringing claims under the MSP Act as assignee of the injured Medicare Advantage Plan assignors.  (*See id.* ¶ 9).

The SAC is composed of detailed background facts regarding the MSP Act; allegations relating to standing and assignments; general allegations regarding Defendant's systemic failures to reimburse Plaintiff's assignors for Medicare conditional payments; exemplar claims with specific facts showing an injury to one or more of Plaintiff's assignors; class action allegations; and two causes of action under the MSP Act.  (*See generally* SAC).  Count I is an action against Defendant for failing to reimburse Plaintiff's assignors (*see id.* ¶¶ 93–105); Count II is a subrogated claim against Defendant for breaching the insurance policies obligating Defendant to cover Medicare beneficiaries' healthcare (*see id.* ¶¶ 106–11).  On April 15, 2021, the Court dismissed all claims except two exemplar claims regarding Medicare beneficiaries R.A. and L.C. (*See* Omnibus Order 14).

***Defendant's Motion***.  R.A. was enrolled in a Medicare Advantage plan issued and administered by Summacare, Inc.  (*See* Decl. of Christopher Miranda, Jr. ("Miranda Decl.") [ECF No. 69-1] 6).[5]  Summacare paid for medical services and treatment for injuries R.A. sustained in an accident on October 8, 2013.  (*See id.* 7).  On May 9, 2014, R.A. signed a settlement agreement and release with Defendant, and Defendant provided a copy of this release to CMS on May 12, 2014.  (*See* Def.'s SOF ¶ 12).  Summacare assigned Plaintiff the right to pursue recovery of R.A.'s

---

[4] The Court dismissed co-Plaintiff, MSPA Claims 1, LLC, and co-Defendant, American National General Insurance Company, leaving only Plaintiff, MSP Recovery Claims, Series LLC and Defendant, American National Property & Casualty Company, in this suit.  (*See* Apr. 15, 2021 Omnibus Order [ECF No. 51] 14).

[5] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

claim in June 2017.  (*See* Miranda Decl. 6).  Defendant does not dispute the cost of R.A.'s care was covered by a no-fault policy issued by Defendant, or that Defendant did not reimburse Summacare for its conditional payment of R.A.'s medical expenses.  (*See generally* Mot.). Instead, Defendant asserts Plaintiff's suit is time-barred.[6]  (*See id.* 4–9).

L.C. was enrolled in a Medicare Advantage plan issued and administered by Blue Cross Blue Shield of Rhode Island ("BCBSRI").  (*See* Miranda Decl. 8).  BCBSRI paid for medical services treating injuries L.C. sustained in an accident on May 9, 2018.  (*See id.*).  BCBSRI assigned Plaintiff the right to pursue recovery of L.C.'s claim.  (*See id.*).  The parties dispute whether Defendant is the primary plan responsible for L.C.'s claim.[7]  (*See generally* Mot.; Resp.; Reply).

The Court examines R.A. and L.C.'s claims in turn.

## II.  STANDARD

Summary judgment may only be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court draws all reasonable inferences in favor

---

[6] Defendant also maintains Plaintiff does not have standing; Summacare did not make a proper conditional payment; and Defendant did not insure R.A., so there is no contract to which Plaintiff can be subrogated. (*See* Mot. 9–17).  The Court does not address these issues because, as discussed below, R.A.'s claim is time-barred.

[7] Defendant also contends that because it did not insure L.C., there is no contract to which Plaintiff can be subrogated.  (*See* Mot. 16).  Because Plaintiff does not provide any evidence that Defendant's was the primary plan responsible, the Court does not address the issue of subrogation.

of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim, and (2) showing the Court that there is not sufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14209-Civ, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015) (citations omitted).  "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id*. (citing Fed. R. Civ. P. 56(c)(1); alteration added; quotation marks omitted).

 "Summary judgment may be inappropriate even where the parties agree on the basic facts [] but disagree about the inferences that should be drawn from these facts." *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (alteration added; citation omitted).  Indeed, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment" and proceed to trial. *Id.* (alteration added; citations omitted).

## III.   ANALYSIS

***R.A.'s Claim is Barred by the Statute of Limitations***.  Defendant argues R.A.'s claim, which stems from an accident that occurred in October 2013, is time-barred.  Defendant is correct.

The MSP Act provides both a government cause of action and a private cause of action. *See* 42 U.S.C. §§ 1395y(b)(2)(B)(iii), (b)(3)(A).  "Section 1395y(b)(2)(B)(iii) contains a statute of limitations that requires the government to sue within three years of the date that Medicare receives

notice of a primary payer's responsibility to pay." *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 767 (11th Cir. 2020). "Unlike the government cause of action, the private cause of action contains no statute of limitations." *Id.*

In general, courts remedially fashion a limitations period when Congress fails to expressly include one for a cause of action, aiming "to 'borrow' the most suitable statute or other rule of timeliness from some other source." *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 158 (1983). While courts sometimes borrow from federal law, the Supreme Court "has left no doubt" that state law is "the lender of first resort." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 33–34 (1995). There is, however, one "closely circumscribed exception to the general rule that statutes of limitation are to be borrowed from state law." *Reed v. United Transp. Union*, 488 U.S. 319, 324 (1989). This exception applies "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Id.* (quotation marks omitted; quoting *DelCostello*, 462 U.S. at 172).

Defendant contends R.A.'s claim is barred under either of the limitations periods that may apply: (1) the four-year period found in section 95.11(3)(f), Florida Statutes; or (2) the six-year period found under the False Claims Act ("FCA"), 31 U.S.C. § 3731(b)(1). (*See* Mot. 4–9). Another court in this District has applied Florida's four-year provision. *See Brooks v. Blue Cross & Blue Shield of Fla.*, No. 95-405-Civ, 1995 WL 931702, at *18 (S.D. Fla. Sept. 22, 1995), *aff'd on other grounds sub nom. Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1365 (11th Cir. 1997). Other courts have applied the FCA's six-year period. *See, e.g.*, *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 394–95, 398 (2d Cir. 2001).

CASE NO. 20-24077-CIV-ALTONAGA/Torres

Undeterred, Plaintiff insists the Court borrow from a different statutory provision — the section of the MSP Act governing the government cause of action, 42 U.S.C. section 1395y(b)(2)(B)(iii).  (*See* Resp. 5–12).  As noted, this provision contains a three-year statute of limitations.  More importantly, Plaintiff focuses on certain language in the provision regarding notice:

> An action may not be brought by the United States under this clause with respect to payment owed unless the complaint is filed not later than 3 years *after the date of the receipt of notice of a settlement, judgment, award, or other payment made pursuant to paragraph (8) relating to such payment owed*.

42 U.S.C. § 1395y(b)(2)(B)(iii) (emphasis added).   Under Plaintiff's interpretation of this provision, a primary payer must provide "actual written notice" to the relevant MAO — in this case, Summacare — yet Defendant only provided notice to CMS; therefore, according to Plaintiff, the statute of limitations never began to run on R.A.'s claim.  (Resp. 4–5).  Putting aside this tenuous argument, the Court is unconvinced the limitations provision should be borrowed from the government cause of action at all.

Another district court in this Circuit recently addressed the exact issue of whether the limitations provision contained in the government cause of action should be borrowed for the private cause of action.  *See MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, No. 1:18-cv-157, 2021 WL 1041662, at *2–6 (N.D. Fla. Jan. 7, 2021).  The court in *Tower Hill* concluded "the government action's limitations period is an imperfect fit for private actions, and not the most suitable to borrow." *Id.* at *4.

Indeed, if the MSP Act's federal purpose is "to curb the rising costs of Medicare" (Resp. 7 (citation and quotation marks omitted)), then it makes little sense to apply a *shorter* limitations period than what state law might apply. *See Tower Hill*, 2021 WL 1041662, at *3.  Plaintiff fails

to show how applying Florida's four-year provision would frustrate federal policy; quite the contrary, borrowing from state law appears to further federal policy interests.

Plaintiff likewise fails to establish that the practicalities of litigation weigh in favor of borrowing from the federal law. Section 1395y(b)(2)(B)(iii) states the notice that triggers the government's limitations period is the notice "made pursuant to paragraph (8) relating to such payment owed[,]" *id.* (alteration added); and paragraph 8 requires notice "to the Secretary in a form and manner (including frequency) specified by the Secretary[,]" *id.* § 1395y(b)(8)(A)(ii) (alteration added). It is thus "not clear how a private person would receive this notice, but it is clear that notice 'made pursuant to paragraph (8)' is notice to the Secretary — not to some private party." *Tower Hill*, 2021 WL 1041662, at *3. Furthermore, Plaintiff's theory that "actual notice" must be provided to the MAO is flawed. Because MAOs can look up information about settlements reported to CMS, under Plaintiff's theory, "an entity could confirm the viability of claims online and then sit on its hands waiting to trigger the limitations period until it contacts an unsuspecting primary payer."[8] *Id.*

In short, Plaintiff does not present a situation falling under the "closely circumscribed exception to the general rule that statutes of limitation are to be borrowed from state law." *Reed*, 488 U.S. at 324. The Court declines to apply the limitations period contained in the government cause of action and will instead use one of Defendant's proposed periods.

Turning to the facts. The material facts are not in dispute. (*See* Resp. 4–13 (arguing only that the government cause of action's limitations period applies and Defendant had to give actual notice to Summacare); *see also* Pl.'s Resp. SOF ¶¶ 9–14 (stating it is undisputed that notice of

---

[8] Plaintiff's citation to *Kingsway* is equally unconvincing. (*See* Resp. 8–9). The court in *Kingsway* clearly stated that case was not about the statute of limitations: "the lone question presented [was] whether compliance with the claims-filing provision is a prerequisite to filing suit under the [MSP] Act's private cause of action." 950 F.3d at 770 (alterations added).

R.A.'s settlement agreement was given to CMS in May 2014)).  Plaintiff filed its Complaint on October 6, 2020.  (*See generally* Compl.).  According to Defendant, the limitations period began to run either in October 2013, when medical services were rendered to R.A., or in May 2014, when Defendant provided written notice of the settlement of R.A.'s claim to CMS.  (*See* Mot. 6–7). R.A.'s claim is barred under any given scenario; even using the later date on which notice was provided to CMS and the longer six-year limitations period under the FCA, R.A.'s claim would be time-barred by over four months.  (*See id.* 9).  The Court need not decide which limitations period to apply because R.A.'s claim is barred under either of Defendant's proposed periods.

Because R.A.'s claim is barred under either applicable statute of limitations, summary judgment will be entered in favor of Defendant as to both counts of R.A.'s claim.

***No Genuine Issues of Material Fact Remain as to L.C.'s Claim***.  To recover under L.C.'s claim, Plaintiff must prove with evidence that Defendant is actually responsible for primary payment of the expenses Plaintiff seeks to recover.  *See MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1361 (11th Cir. 2016).  Defendant argues Plaintiff has failed to satisfy its burden to show Defendant is the primary payer for L.C.'s claim.  (*See* Mot. 3–4).  The Court agrees.

According to Defendant, "the undisputable evidence is that no valid insurance contract exists that could possibly render [Defendant] a responsible payer for any alleged injuries to or medical benefits provided for L.C."  (*Id.* 4 (alteration added)).  Defendant contends it is entitled to summary judgment on L.C.'s claim because Plaintiff has not presented any evidence that Defendant issued a policy, or entered into a settlement, covering L.C.'s medical expenses.  (*See id.*).

In response, Plaintiff submits a lone piece of evidence, a screenshot from a "MyAbility Report" that purportedly shows Defendant is the primary payer in L.C.'s case.  (*See* Miranda Decl.

9, 38–39).  In its SAC, Plaintiff alleges "MyAbility is one of [16] CMS-authorized vendors that allow companies, such as Plaintiff[], to access data that primary payers report to CMS, in compliance with their statutory reporting obligations."  (SAC 5 n.3 (alterations added)).  There are two fatal flaws to Plaintiff's reliance on the MyAbility Report: (1) Plaintiff fails to establish the report is admissible; and (2) even if it were admissible, Plaintiff may not rely on mandatory reporting requirements to establish Defendant is the primary payer.  The Court examines each proposition.

Under Federal Rule of Civil Procedure 56(c)(2), a party seeking summary judgment "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  *Id.*  "On motions for summary judgment, a court may consider only that evidence which can be reduced to an admissible form."  *Snover v. City of Starke, Fla.*, 398 F. App'x 445, 449 (11th Cir. 2010) (alteration adopted; citations and quotation marks omitted).  "Authentication is a condition precedent to admissibility."  *Id.* (quotation marks omitted; citing Fed. R. Evid. 901(a)).  While otherwise admissible evidence may be submitted in inadmissible form at the summary judgment stage, inadmissible hearsay may not be used to defeat summary judgment when hearsay will not be available in admissible form at trial.  *See McMillian v. Johnson*, 88 F.3d 1573, 1584–85 (11th Cir. 1996); *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001).

Plaintiff submits a screenshot of L.C.'s MyAbility Report as an exhibit to the declaration of Christopher Miranda, Jr., Plaintiff's Chief Information Officer.  (*See* Miranda Decl. 1).  Among various pieces of information included in the MyAbility Report is a section titled "Status Alert: Medicare Secondary Payer[,]" which identifies "AMERICAN NATIONAL PROPERTY" as the primary plan.  (*Id.* 39 (alteration added)).  This screenshot is unauthenticated hearsay.

"[W]ebsites are not among the categories of documents that may be self-authenticated under [Federal Rule of Evidence 902]." *SMS Audio, LLC v. Belson*, No. 16-81308-Civ, 2017 WL 1533971, at *3 n.1 (S.D. Fla. Mar. 20, 2017) (alterations added). "To authenticate printouts from a website, the party proffering the evidence must produce some statement or affidavit from someone with knowledge of the website[;] for example[,] a web master or someone else with personal knowledge would be sufficient." *Pyure Brands, LLC v. Nascent Health Sci. LLC*, No. 1:18-cv-23357, 2019 WL 7945231, at *5 (S.D. Fla. Mar. 5, 2019) (alterations adopted; other alterations added; quotation marks omitted; quoting *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, No. 8:06-CV-223, 2006 WL 1320242, at *2 (M.D. Fla. May 12, 2006)).

The only attempt at authentication is a statement by Mr. Miranda that he obtained L.C.'s MyAbility Report.[9]   (*See* Miranda Decl. 9).   Mr. Miranda is an employee of Plaintiff, not MyAbility; the mere statement he obtained the report is not sufficient for authentication.[10]   *See Sanderson*, 2006 WL 1320242, at *2.   This is especially true when Mr. Miranda himself has admitted the information in the MyAbility Report may be inaccurate.   (*See* Dep. of Christopher Miranda ("Miranda Dep.") [ECF No. 72-3] 67:12–14 ("There is a potential that, despite the

___

[9] Courts have also held the date the website was accessed and the webpage URL address must be provided to authenticate a screenshot. *See Z Indus. USA, LLC v. Circuitronix, LLC*, No. 17-cv-60727, 2018 WL 3412854, at *16 (S.D. Fla. June 20, 2018) (collecting cases). Although the MyAbility Report includes the date the report was generated, which is presumably when Mr. Miranda ran the search and accessed the website, no URL is included. (*See* Miranda Decl. 38).

[10] While some courts may permit authentication of a website printout by a witness who saw and created the printout "for the limited purpose of proving that the postings had appeared on the world wide web on the days that the witness personally saw the postings and printed them off the computer" — *e.g.*, defamation, trademark, and copyright cases — this is not such a case. *SMS Audio, LLC*, 2017 WL 1533971, at *3 (alteration adopted; citation and quotation marks omitted; collecting cases). Plaintiff offers the MyAbility Report as proof that Defendant is primarily responsible for L.C.'s medical expenses. The value of this evidence hinges on whether the MyAbility Report is true and accurate, not the mere fact it was on the internet.

indication on the [My]Ability report of a settlement, that there is not, in fact, a settlement." (alteration added))).

Although the SAC may allege Defendant created the report (*see* SAC 5 n. 3), Plaintiff has provided no evidence to back this assertion.  Defendant's corporate representative testified under oath that he was unfamiliar with MyAbility and did not know where the MyAbility Report came from.  (*See* Dep. of Lucas Smith ("Smith Dep.") [ECF No. 68-2] 51:12–24, 54:6–17).  The Court will not consider the MyAbility Report and even if it did, would not find it to be persuasive evidence considering the failure to explain who created the MyAbility Report or how that individual determined Defendant is the primary payer for L.C.'s medical expenses. *See Sanderson*, 2006 WL 1320242, at *2; *see also Pyure Brands, LLC*, 2019 WL 7945231, at *5.

In addition, the MyAbility Report is plainly hearsay.  The identification of Defendant as the primary payer of L.C.'s medical expenses is an out-of-court statement not made by Plaintiff, Defendant, or Mr. Miranda, and it is offered to prove Defendant is indeed the primary payer. *See Pyure Brands, LLC*, 2019 WL 7945231, at *5.  To the extent Plaintiff argues the MyAbility Report qualifies for the business records exception, the Court disagrees.  (*See* Miranda Decl. 2).  For a document to qualify for this exception, five elements must be satisfied:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

As discussed, Mr. Miranda did not create the MyAbility Report, and he did not explain who did or how that person obtained the underlying information.  And while the report indicates a "[r]esponse" was generated on February 2, 2021, this appears to reflect the date Mr. Miranda accessed the MyAbility website to run a search of L.C's information, not when the actual MyAbility Report was formulated.  (Miranda Decl. 38 (alteration added)).  Finally, Defendant has established that the document is unreliable.  (*See* Miranda Dep. 67:12–14 ("There is a potential that, despite the indication on the [My]Ability report of a settlement, that there is not, in fact, a settlement." (alteration added)); Smith Dep. 51:12–24, 54:6–17, 57:1–9 (testifying Defendant did not create the MyAbility Report, submit the information used to create the Report, or know who reported such information)).  Accordingly, the MyAbility Report is inadmissible hearsay.

Even if the Court were to consider the MyAbility Report, Plaintiff cannot rely on mandatory reporting to establish Defendant is a primary payer.  Another court in this District recently examined this exact issue.  *See MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, No. 19-21583-Civ, 2021 WL 2217706, at \*7–11 (S.D. Fla. May 24, 2021), *report and recommendation adopted*, 2021 WL 2915097 (S.D. Fla. July 12, 2021).  In *Covington Specialty Ins. Co.*, the court held that Plaintiff's affiliate, MSPA Claims 1, LLC, could not rely on mandatory reporting requirements to demonstrate the insurer-defendant was a primary payer because doing so would be inconsistent with the text of the MSP Act.  *See id.* at \*11.  The same analysis applies here.

The MSP Act states "[a] primary plan's responsibility for [] payment may be *demonstrated* by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means."  42

U.S.C. § 1395y(b)(2)(B)(ii) (alterations added; emphasis added). Imposing primary payer responsibility automatically for complying with mandatory reporting requirements is inconsistent with the requirement that Plaintiff "demonstrate" such responsibility. *Covington Specialty Ins. Co.*, 2021 WL 2217706, at \*11. Moreover, "mandatory reporting requirements is [sic] noticeably not on [the] list" of methods to demonstrate primary payer status. *Id.* (alteration added). While it remains unclear who exactly input the relevant information in MyAbility or how that system works, Plaintiff explained the data comes from "primary payers['] report[s] to CMS, in compliance with their statutory reporting obligations." (SAC 5 n.3 (alterations added)). According to Plaintiff, this information was submitted pursuant to the MSP Act's mandatory reporting requirements; therefore, Plaintiff may not rely solely on this evidence to establish Defendant is the primary payer.

To recap, Plaintiff has failed to provide any persuasive or admissible evidence showing Defendant is liable for L.C.'s claim. Because no genuine material issues of fact remain, summary judgment will be entered in favor of Defendant as to both counts of L.C.'s claim.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant, American National Property & Casualty Company's Motion for Summary Judgment **[ECF No. 59]** is **GRANTED**. Final judgment will issue by separate order. The Clerk of Court is directed to **CLOSE** this case, and any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of July, 2021.

_____

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record